UNITED STATES

v.

**Airman William K. FRISBIE, FR 208–48–4716, United States Air Force.**

**ACM S28109.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 May 1989.

Decided 10 Jan. 1990.

Appellate Counsel for appellant: Colonel Richard F. O'Hair; Captain Paul M. Dankovich and Major Robert L. Frasier, USAFR.

Appellate Counsel for the U.S.: Colonel Joe R. Lamport, Major Terry M. Petrie and Captain Morris D. Davis.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

## DECISION

LEONARD, Judge:

Appellant pleaded guilty to and was convicted of six specifications of forgery of checks taken from two airmen in his barracks and one specification of altering a military identification card of his roommate by substituting the appellant's picture for that of the roommate. Contrary to his plea, he was also convicted of wrongfully and willfully impersonating a commissioned officer. Appellant's three assertions of error all involve the impersonation offense. We find no merit in any of the assertions, but do find error in the military judge's findings.

The first error asserted is that the specification alleging the impersonation fails to state an offense. This specification alleged the accused:

> [D]id, at divers times during the period from on or about 23 December 1988 until on or about 18 February 1989, at Griffiss Air Force Base, New York, and at Elmira, New York, wrongfully and willfully impersonate a commissioned officer of the United States Air Force, by publicly wearing the uniform and insignia of rank of a lieutenant of the United States Air Force.

Appellant maintains that an impersonation offense must allege more than just public wear of an officer's uniform by an enlisted person. Citing *United States v. Yum*, 10 M.J. 1 (C.M.A.1980) and *United States v. Hall*, 25 M.J. 628 (A.F.C.M.R. 1987); he insists that mere public wear of the uniform and insignia alone is not enough and the offense must also allege an overt act that asserts, implicitly or explicitly, the authority of a commissioned officer. We disagree.

Early cases held that the offense of impersonating an officer did not require allegation or proof of any act of deception or of misleading a third party or that any benefit be gained from the masquerade. *United States v. Messenger*, 2 U.S.C.M.A. 21, 6 C.M.R. 21 (1952). Merely alleging that a private publicly wore the uniforms and insignia of a captain and sergeant of the United States Army was held sufficient to state an offense in a 1944 case. *United States v. Miller*, 43 B.R. 135. A more recent case, *United States v. Pasha*, 24 M.J. 87 (C.M.A.1987), found sufficient a very similar specification alleging that an Army specialist four impersonated a noncommissioned officer by publicly wearing the uniform and insignia of an Army sergeant first class on a military installation.

Paragraph 86 of Part IV, MCM (1984) provides that: "Impersonation does not depend upon the accused deriving a benefit from the deception or upon some third party being misled." The analysis accompanying the 1984 Manual for Courts–Martial provides that this explanation is based on *Messenger* and *United States v. Demetris*, 9 U.S.C.M.A. 412, 26 C.M.R. 192 (1958). Further, the sample specification following that explanation provides an option that fits appellant's specification exactly. Note 2 of paragraph 86 appears to support the appellant's position until subjected to a close reading. This note requires extra words in specifications and an extra element of proof in cases where it is alleged that an accused impersonated *an official of a certain government* without an intent to defraud. That additional element is that: "the accused committed one or more acts which exercised or asserted the authority of the office the accused claimed to have." A specification alleging impersonation of an official of a certain government must

also state the means by which the accused exercised or asserted this authority. MCM, Part IV, paragraph 86 f** (1984). Both these provisions apply only to cases involving impersonating officials of a certain government and do not apply to impersonating a commissioned officer, warrant officer or noncommissioned officer. In accord with the authorities cited above, allegations of impersonations of these latter categories only require a statement that the accused was wearing the uniform and insignia or presenting false credentials of a commissioned officer, warrant officer or noncommissioned officer.

The cases of *Yum* and *Hall* relied upon by appellant are not contrary. In the *Yum* case, a specification was found deficient when it only alleged an Army specialist four impersonated an Army Criminal Investigation Division Agent by informing hotel employees he was such an agent and listing the Eighth U.S. Army Criminal Investigation Division as his address on a guest registration. In the *Hall* case, the defective specification alleged an airman basic impersonated a commissioned officer by merely stating to certain civilians that he was a captain in the United States Air Force. Neither of these cases involved the public wear of a uniform or the presentation of false credentials. Writing a concurring opinion in *Yum*, Judge Everett stated that an impersonation allegation must show how the accused was playing the role of the person impersonated. 10 M.J. at 5. In *Hall*, Judge Sessoms stated that a specification must allege more than "a bare false representation" and noted that alleging use of a false business card had been held sufficient in the case of *United States v. Cagle*, 12 M.J. 736 (A.F.C.M.R.1981). In the *Pasha* case, Judge Cox referred to Judge Everett's concurring opinion in *Yum* and found that an impersonation specification is sufficient if it alleges that the accused was playing the role of a noncommissioned officer by the overt act of publicly wearing the uniform and insignia of such. 24 M.J. at 92.

Applying the law as set forth in *Miller*, *Pasha* and paragraph 86 of Part IV, MCM (1984), the specification alleging appellant impersonated an officer properly stated an offense under Article 134, UCMJ, 10 U.S.C. § 934.

The second error asserted is that there was not sufficient evidence introduced at appellant's trial to support the military judge's finding of guilty of the offense of impersonating an officer. Appellant's position on this assertion is very similar to his position on the first error asserted. Again citing *Yum*, he maintains the government failed to prove an additional required element that appellant used his assumed status to assert any authority as an officer. We do not agree that this additional element is required in this case. In *Messenger*, Judge Latimer, in affirming an impersonating conviction for an enlisted man publicly wearing an officer's uniform, very succinctly stated the gravamen of the offense as follows:

> [I]mpersonation does not depend upon the accused deriving a benefit from the deception or upon some third party being misled, but rather upon whether the acts and conduct would influence adversely the good order and discipline of the armed forces. It requires little imagination to conclude that a spirit of confusion and disorder, and a lack of discipline in the military would result if enlisted personnel were permitted to assume the role of officers and masquerade as persons of higher rank.

6 C.M.R. at 24.

Applying the law, we find that to establish appellant's guilt of this offense, there must be proof beyond a reasonable doubt of three elements. First, the appellant must have impersonated a commissioned officer of the United States Air Force by publicly wearing the uniform and insignia of a commissioned officer. Second, this impersonation must be willful and wrongful. Third, under the circumstances, the appellant's conduct must be prejudicial to good order and discipline in the armed forces or be of a nature to bring discredit upon the armed forces. 24 M.J. at 92; 6 C.M.R. at 25; MCM, Part IV, paragraph 86 b (1984). An impersonation offense involving an enlisted person publicly wearing a

commissioned officer's uniform, does not require a separate element of an overt act asserting the authority of a commissioned officer, because the manner of impersonation, public wear of the uniform and insignia, provides that overt act. 24 M.J. at 92. When an enlisted man dresses in the uniform and insignia of an officer and wears such publicly no further act is necessary to assert authority as an officer. *Id.* By wearing the uniform and insignia of an officer, he is asserting that he is an officer and is entitled to the respect and courteousies accorded the status of a commissioned officer by statue, regulation and custom of the service.

■ The evidence in this case proves only one impersonation beyond a reasonable doubt. The evidence established that appellant, who was an enlisted man entitled to the rank of airman, wore the uniform of a lieutenant in the United States Air Force on at least two, possibly three, occasions. The first occasion was in his dormitory room where he was observed by Army Private First Class Harris, who occasionally shared the room. Harris knew who the appellant was and thought the appellant was wearing the uniform to collect a bet. Appellant covered the uniform with a civilian coat as he was leaving the room and it was not observed by anyone other than Harris.

The military judge entered specific findings and he found the appellant guilty of the impersonation offense on divers occasions as charged. In those findings, he relied upon the observation by Harris to establish the prejudice to good order and discipline necessary for guilt. Contrary to the military judge's specific findings, we do not consider this wear of the uniform to be a public impersonation of the type required to establish prejudice to good order and discipline. It is clear from Harris' testimony that Harris did not believe the appellant was a commissioned officer and did not treat appellant as if he were a commissioned officer. Further, it is also clear this wear of the uniform was not in public. It was in the privacy of the appellant's dormitory room and was only observed by an

individual who had the permission of the room occupants to share the room. When appellant left the room, he used a coat to cover the shirt portion of the uniform bearing the commissioned officer insignia and there was no evidence that it was observed by anyone other than Harris.

■ The next impersonation occasion the government attempted to prove was an observation by an Airman Sehl outside the Base Exchange at Griffiss Air Force Base, New York. This observation was fleeting and Airman Sehl was not certain the individual was the appellant. Furthermore, as to the impersonation, Sehl testified he thought he saw the silver bars of a lieutenant on the lapel of a blue raincoat being worn over a fatigue uniform. In making his specific findings, the military judge did not mention this incident and we are uncertain whether this was due to disregarding the evidence as unreliable, due to an oversight, or due to reliance on only the incident in the dormitory to support his finding of guilty. In any event, we do not consider this evidence reliable for two reasons. First, Sehl admits he was uncertain the person he saw was appellant. Second, judicially noticing Air Force Regulation 35–10, *Dress and Personal Appearance of Air Force Personnel*, Figure 3–7, Note 1, (April 1989), we find that officers wear metal grade insignia on the epaulets of a raincoat and enlisted personnel wear metal grade insignia on the collar or lapel of a raincoat. Whatever insignia Sehl saw on the raincoat of the individual he thought was appellant, was in the place reserved for enlisted insignia. Further, we note that, from a distance, the metal grade insignia of an airman would look very similar to that of a first lieutenant. For these reasons, we don't deem the evidence of Sehl's observation sufficient to find appellant guilty of impersonating a commissioned officer.

■ The last incident of impersonation offered by the government provides sufficient proof to find beyond a reasonable doubt that appellant committed the offense of impersonating a commissioned officer. This time appellant was observed by an

Airman First Class Andreason at a shopping mall in Elmira, New York, about two and one half hours from Griffiss Air Force Base. Andreason, who was a security policeman, knew the appellant because the appellant regularly served him food at the Griffiss enlisted dining facility. At the shopping mall, Andreason saw the appellant wearing the uniform and insignia of a first lieutenant in the Air Force. The appellant passed within 10 to 15 feet of Andreason and he could read the appellant's name on the name tag on the uniform shirt. This impersonation satisfies all the elements of an impersonation offense. The appellant impersonated a commissioned officer by the overt act of wearing the grade and insignia of a commissioned officer publicly. Appellant, an airman, was willfully wearing a commissioned officer's uniform with the insignia of a first lieutenant and such wear was wrongful. Finally, an enlisted person's wrongful public wear of the uniform and insignia of a commissioned officer is prejudicial to good order and discipline of the armed forces. 24 M.J. at 92; 6 C.M.R. at 25; 43 B.R. at 136.

Having found proof beyond a reasonable doubt of impersonation of an officer on only one occasion, we only approve so much of the military judge's findings of guilt on this offense as provides for one incident of impersonating a commissioned officer.

■ The third asserted error was that the military judge failed to suppress evidence seized during a search of appellant's room. Agents from the Air Force Office of Special Investigations obtained the appellant's consent to search his dormitory room after informing him that they were investigating the offenses of theft and forgery of checks. During the search, they found evidence of forgery and seized it. They also found officer uniforms made up for a first and second lieutenant and officer insignia ranging from second lieutenant through major general and they seized these items. According to the agents, they seized the uniforms and insignia because they were aware that the first sergeant suspected appellant of impersonating an officer and they considered the uniforms and insignia evidence of this offense. Appellant maintains that the seizure was invalid because it exceeded the scope of the consent given by appellant. We disagree. The agents were engaged in a lawful consent search, were in a location where they had a lawful right to be under the terms of that consent, and were looking in locations where they could expect to find items of the type they had been given consent to look for. Under these circumstances, any evidence of a crime they discover may be seized. *United States v. Breseman*, 26 M.J. 398 (C.M.A.1988). Further, the consent form the appellant signed clearly informed him that the agents could seize "any ... property they consider[ed] evidence of an offense." The seizure of the uniforms and insignia was valid and the military judge did not err in denying the motion to suppress.

Having examined the record of trial, the assignments of error, and the government's reply, we approve the findings of guilty as modified and having reassessed the sentence, we are convinced the sentence is appropriate in relation to the affirmed findings of guilty and is no greater than that which would have been imposed if the military judge's error in findings had not been committed. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Accordingly, the findings of guilty, as modified, and the sentence are AFFIRMED.

Senior Judge FORAY and Judge MURDOCK concur.